IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRITTNEY TYUS, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:15-cv-211-WKW-PWG |
| | ) | |
| VIRGINIA COLLEGE, LLC and | ) | |
| EDWARD DAVIS, | ) | |
| | ) | |
|    Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff Brittney Tyus brings this action under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, seeking redress for alleged sexual harassment by Defendants Virginia College, LLC ("Virginia College"), and Edward Davis, who is an instructor at Virginia College.[1]  (Doc. 1).  Generally, Plaintiff avers that, during her time as a student at Virginia College, Defendant Davis subjected her to unwelcome sexual advances consisting of comments and touching, she reported Davis's conduct to administrators with Virginia College, after she reported the

---

[1] According to the court's record, Defendant Edward Davis has not yet been served with a summons and copy of the Complaint nor has he appeared to defend against this litigation.  A summons was issued on April 2, 2015.  (Doc. 2).  The time allotted under Rule 4, Fed. R. Civ. P., has not yet expired for Plaintiff to serve Defendant Davis, and no party argues that Plaintiff's claims against Davis are subject to arbitration by virtue of the purported arbitration agreements proffered by Virginia College.  This matter may proceed to a determination on the arbitrability of Plaintiff's claims against Virginia College in Defendant Davis's absence.

conduct Davis took adverse action against her including lowering her grades, there are other women who are students and who have been subjected to unwanted sexual advances by Davis, and that Virginia College knows about the allegations against Davis and turns a blind eye. (Doc. 1).

Subject-matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested, and there are adequate allegations to support both.  On April 13, 2015, this case was referred to the undersigned for review by United States District Judge W. Keith Watkins. (Doc. 5); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

This matter is presently before the court on "Defendant Virginia College, LLC's Motion to Compel Arbitration and/or Motion to Dismiss, and Supporting Memorandum of Law."[2]   (Doc. 6).   Virginia College contends and provides supporting evidence that Plaintiff's claims against it are subject to four separate arbitration agreements and petitions for an order compelling Plaintiff to arbitrate her

---

[2] In a footnote of its motion to compel arbitration and to dismiss, Virginia College argues that, "[t]o the extent Plaintiff attempts to assert a claim under Title IX against Dr. Edward Davis, such claim should be dismissed, as Title IX does not allow plaintiffs to assert claims against individual defendants."  (Doc. 6 at p. 2 n.1).  The attorneys of record for Virginia College have not filed a notice of appearance on behalf of Defendant Davis.  Moreover, a request to dismiss Davis that is asserted in a footnote of a motion to compel arbitration brought by Davis's co-defendant is not properly before the court.  As such, the observation by Virginia College regarding the propriety of dismissal of the claims against Davis are not considered herein.

claims against it and dismissing the lawsuit.[3]  For her part, Plaintiff "vehemently disputes that she agreed to any arbitration provision" and filed evidence that, if credited and believed, shows that she did not sign, agree to, or was even aware of the written agreements proffered by Virginia College, including the arbitration agreements, but that the documents were completed by employees of Virginia College without Plaintiff's knowledge or assent.  (Docs. 1 & 8).[4]

While Virginia College largely ignores Plaintiff's evidence and premises most

---

[3] Virginia College's sole basis for its motion to dismiss is that this matter should be referred to arbitration and, once arbitration is compelled, the claims against Virginia College should be dismissed, presumably because this lawsuit will be duplicative of the arbitration proceedings.  Virginia College does not evoke Rule 12, Fed. R. Civ. P., or make substantive or jurisdictional arguments in favor of dismissal.  In footnote 4 of its motion to compel arbitration, Virginia College petitions the court, in the alternative and should the court deny the motion to dismiss, for a stay of these proceedings pending the conclusion of arbitration.  (Doc. 6 at p. 10 n.4).  Because the undersigned recommends that the issue of arbitrablity is due to be set for trial, no decision or recommendation is reached on the propriety of dismissal of the claims against Virginia College or whether a stay of this matter is appropriate if arbitration is compelled.  Such a decision or recommendation is premature before the issue of arbitrability is resolved.  However, dismissal of this lawsuit as a whole is not appropriate as Defendant Davis is a party and Plaintiff has active claims pending against that Defendant.

Also in footnote 4 of its motion, Virginia College insists that "all discovery in this matter must be stayed," which appears to be an offhand motion to stay discovery pending a decision on arbitrability.  Such a motion is unnecessary as discovery is not presently permitted by the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 26(d)(1).  That said, no finding or ruling is made on Virginia College's request to stay discovery.  Consistent with footnote 2, *supra*, motions set out exclusively in footnotes within the body of other motions or filings are disfavored and will not be considered by the court.

[4] Plaintiff's response in opposition to the motion to compel arbitration, found in the court's record at Doc. 8, contains what appears to be a clerical error.  On May 18, 2015, the Clerk of Court filed a corrected version of Plaintiff's opposition into the court's record at Doc. 10-1.  (Doc. 10; Notice of Correction).  The two documents are substantively identical and will be referenced herein as "Doc. 8."

of its arguments on the mistaken notion that the court can disregard that evidence, the existence of an agreement to arbitrate is in issue. That issue cannot be resolved as a matter of law on the disputed evidence of record. Therefore, upon consideration, the Magistrate Judge **RECOMMENDS** that the motion to compel arbitration and/or to dismiss (Doc. 6) is due to be **DENIED** and that this matter should be set for a jury trial or a bench trial, as appropriate, on the questions of arbitrability and mutual assent for the reasons and as discussed *infra*.

## I.   STANDARD OF REVIEW AND RELEVANT LEGAL PRINCIPLES

"Under the FAA, 'parties cannot be forced to submit to arbitration if they have not agreed to do so.'" *Chambers v. Groome Transp. of Alabama*, 41 F.Supp.3d 1327, 1339 (M.D. Ala. 2014) (quoting *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992)) (Watkins, J.). A court must determine whether there is an agreement to arbitrate, which is generally a decision for the court and not an arbitrator unless the parties have expressly agreed otherwise. *See Chambers*, *supra* (discussing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)). This case falls within that general rule and the parties do not argue otherwise.

Pursuant to the FAA, a written arbitration provision in a "contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a

4

written agreement," it may petition a federal district court "for an order directing that such arbitration proceed in the manner provided for in [the] agreement." 9 U.S.C. § 4. When addressing a § 4 motion, the district court must determine whether there is a binding agreement to arbitrate and, if so, whether the nonmovant has breached its obligation to arbitrate under that agreement. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 n. 27, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (citing 9 U.S.C. §§ 4, 6).

The court can consider evidence outside of the pleadings for purposes of a motion to compel arbitration. The Eleventh Circuit has countenanced the use of the summary judgment standard to resolve a motion to compel arbitration. *See Johnson v. KeyBank Nat'l Assoc.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (describing an order compelling arbitration as "summary-judgment-like"; it is "'in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate'") (quoting *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 Fed. App'x. 782, 785–86 (11th Cir. 2008) (*per curiam*)).[5]

*Chambers*, 41 F.Supp.3d at 1334.

The test to determine arbitrability and the allocation of the parties' burdens is

clear:

Section 2 [of the FAA] requires a two-pronged inquiry: first, whether there is an arbitration agreement in writing; and second, if so, whether the agreement is part of a transaction involving interstate commerce. [The party seeking to compel arbitration] bears the burden of proving both prongs. *Univ. of S. Ala. Found. v. Walley*, No. 99cv1287, 2001 WL 237309, at *3 (M.D. Ala. Jan. 30, 2001); *see also Williams v. Eddie Acardi Motor Co.*, No. 07cv782, 2008 WL 686222,

---

[5] *See also*, *e.g.*, *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir. 1980) (adopted with approval in *Magnolia Capital Advisors, Inc.*, 272 Fed. App'x. at 785–86 (11th Cir. 2008)).

at *7 (M.D. Fla. Mar. 10, 2008) ("Defendant's burden is to establish there is a valid written agreement to arbitrate."). These prongs also are not resolved with the "thumb on the scale in favor of arbitration because the federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Bd. of Trs. of City of Delray Beach & Firefighters*, 622 F.3d 1335, 1342 (11th Cir. 2010) (citation and internal quotation marks omitted); *see also Volt Info. Sciences, Inc. v. Bd. of Trs.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so.").

*Chambers*, 41 F.Supp.3d at 1338.

Moreover, courts must usually look to state law principles as to the formation of contracts to determine whether an agreement to arbitrate exists. *See Chambers*, 41 F.Supp.3d at 1342. *See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920 (1995). Under Alabama law,[6] Virginia College has the burden of showing the existence of a contract to arbitrate. *See Owens v. Coosa Valley Health Care, Inc.*, 890 So.2d 983, 986 (Ala. 2004); *Chambers*, 41 F.Supp.3d at 1342. "Conduct of one party to a contract from which the other may reasonably draw an inference of assent to an agreement is effective as acceptance." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kilgore*, 751 So.2d 8, 11 (Ala. 1999) (citing *Anderson*

---

[6] The issues of formation of and mutual assent to the proffered arbitration agreements are appropriately analyzed under Alabama law. Virginia College argues that Alabama law requires enforcement of the agreements, the agreements were purportedly executed in Alabama, and the provisions themselves mandate that arbitration proceedings be conducted in Birmingham, Alabama, and that they are to be construed under Alabama law. (Docs. 6 at p. 3, Doc. 6-1, Doc. 12). If another state's law is applicable, the parties have not made any arguments to that end.

*Brothers Chrysler Plymouth Dodge, Inc. v. Hadley*, 720 So.2d 895 (Ala.1998) (the

failure of a party to sign a contract on a signature line next to an arbitration provision

did not render the provision unenforceable)).  Parties to a contract do not have to sign

the document for there to be an enforceable agreement, but there must be evidence

of assent by other means.  *See*, *e.g.*, *id.*

Plaintiff, who challenges the existence of an arbitration agreement, also has the

following burden:

> [The Eleventh Circuit has] said that a party seeking to avoid
> arbitration must unequivocally deny that an agreement to arbitrate was
> reached and must offer some evidence to substantiate the denial.
> [*Chastain v. Robinson–Humphrey Co.*, 957 F.2d 851, 854 (11th Cir.
> 1992)]. More specifically, we require a party resisting arbitration to
> "substantiate[ ] the denial of the contract with enough evidence to make
> the denial colorable." *Wheat, First Secs., Inc. v. Green*, 993 F.2d 814,
> 819 (11th Cir. 1993) (quotation and citation omitted).  Once an
> agreement to arbitrate is thus put "in issue," the Federal Arbitration Act
> (FAA) requires the district court to "proceed summarily to the trial
> thereof" and if the objecting party has not requested a jury trial, "the
> court shall hear and determine such issue."  9 U.S.C. § 4.

*Magnolia Capital Advisors, Inc.*, 272 Fed. App'x. at 785 (full citation to *Chastain*

supplied).

The parties' positions regarding the motion to compel arbitration are reviewed

in light of that backdrop.

## II.    MATERIAL FACTS[7]

Plaintiff is a nursing student at Virginia College.  She first enrolled on September 17, 2013 and later re-enrolled on September 12, 2014. (Doc. 6-1 at p. 11). That is the extent of the parties' agreement on the material facts with respect to the matter of arbitrability.  The remaining facts are disputed and to such a strong degree that there is no way to reconcile the two versions of events without making findings of fact.  As such, a fact finder, whether it be the court or a jury at trial, will necessarily determine that one party is being truthful and one party is not.

The version of facts put forward by Virginia College, in a distilled form, is that Plaintiff agreed to conduct transactions electronically, including agreeing to arbitrate disputes, and that there are witnesses to Plaintiff having personally executed those agreements.  Virginia College filed an evidentiary submission consisting, in relevant part, of (1) documents which it represents are contracts between the parties wherein Plaintiff agreed to electronically sign enrollment documents and assented to

---

[7] The facts that are pertinent to the issue of arbitrability are not those that support Plaintiff's claims; as such, Plaintiff's allegations of fact regarding her Title IX claim against Defendants are not discussed in detail.  The "facts" set out herein are gleaned from the parties' evidentiary submissions but not from counsels' statements in the parties' briefs.  "Statements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980).  *See also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).  That is not to suggest that the attorneys' versions of events are inaccurate; rather, it is simply to clarify that the "facts" in this Report and Recommendation is mined from the evidence of record.

arbitration[8] and bearing what Virginia College claims is Plaintiff's electronic signature; and (2) three declarations from Virginia College's employees, including testimony from two "enrollment counselor[s]" who met with Plaintiff during the enrollment process. (Doc. 6-1).

The enrollment counselors testify that Virginia College has a uniform, standard enrollment procedure that requires, among other things, every prospective student to electronically assent to an "Electronic Signature (E-Sign) and Consent Form" (hereinafter "E-Sign Form"), which allows for the use of that individual's electronic signature to enter into agreements. (*Id.*). That testimony, however, is not precisely in line with the E-Sign Form itself, which provides that, if a prospective student "decline[s] accepting this consent form, [he or she] will not be able to continue to enroll electronically, and [the prospective student] must contact the school to proceed with [the] application and enrollment and financial planning manually." (Doc. 12 at p. 13). Being required to complete the enrollment process "manually" and being foreclosed from enrollment are not identical, as the enrollment counselors' testimony suggests. The E-Sign Form, consistent with Alabama's Uniform Electronic Transactions Act, Ala. Code § 8-1A-1 *et seq.*, states that a student may refuse to

---

[8] The arbitration provisions are substantively identical, but have different dates of execution.

transact business with Virginia College by electronic means.  *See* Ala. Code § 8-1A-5(b) ("This chapter applies only to transactions between parties each of which has agreed to conduct transactions by electronic means.").  The enrollment counselors testify that they witnessed Plaintiff electronically sign the E-Sign Form and the arbitration agreements at issue.  (Doc. 6-1 at pp. 11-13; 24-26).

Both enrollment counselors deny that they completed any forms or executed any agreements for Plaintiff.[9]  (Doc. 6-1).  Indeed, Virginia College put into evidence an E-Sign Form and documents with arbitration provisions bearing what Virginia College insists is Plaintiff's electronic signature.  (Docs. 6-1 & 12).  The electronic signature appears as typed words on a signature line.  It is Virginia College's position that Plaintiff, like every other student, was required to agree to arbitrate disputes in order to enroll as a student and that she did, in fact, personally execute arbitration agreements as part of the enrollment and re-enrollment process.

Plaintiff, on the other hand, offers a very different version of events.  The evidence provided by Plaintiff, which consists of her affidavit and that of another

---

[9] The enrollment counselors each testify that they witnessed Plaintiff electronically assent to all enrollment agreements, including the arbitration provision, but also claim that no one from "financial planning execute[d] these on [Plaintiff's] behalf because they were completed before she met with the financial aid / planning department."  (Doc. 6-1).  That testimony presupposes a knowledge by the uninitiated reader that enrollment counselors are or are not members of the financial aid / planning department.  That fact is not clarified in the declarations.  The issue need not be resolved at this juncture.

student, has sufficient detail such that it rises above the level of a speculative, general denial of Virginia College's statement of the facts. *See Wheat, First Secs., Inc.*, 993 F.2d at 818-19 (a party resisting arbitration cannot simply opine that no contract exists but must, instead, substantiate "the denial of the contract with enough evidence to make the denial colorable[]") (quoting *Chastain*, 957 F.2d at 855). Plaintiff affirmatively and unequivocally denies ever entering into an arbitration agreement and provides testimony that directly contradicts Virginia College's evidence.

Specifically, Plaintiff testifies that she "never clicked on, signed, viewed, or discussed an arbitration policy" when she met with either of Virginia College's enrollment counselors who provided the aforementioned declarations in support of the motion to compel arbitration.  (Doc. 8-1 at p. 1).  She further states that she did not authorize Virginia College or its agents to affix her signature to any documents nor did she enter into the agreements filed by Virginia College.  Contrary to Virginia College's version of facts, Plaintiff offers evidence that the enrollment counselors were the ones who unilaterally reviewed and completed the enrollment documents, which include the proffered arbitration agreements.  (*Id.*).

Plaintiff's testimony is that, during her first meeting with an enrollment counselor, the counselor "turned her computer toward me so that I could set up and enter a password to complete the online enrollment process ... [o]nce I entered my

password information, [the enrollment counselor] was the only person to enter or click on anything during the enrollment process." (Doc. 8-1 at p. 1). "As [the enrollment counselor] was quickly scrolling through the documents, she told me they included all the enrollment documents" but did not share or mention any agreements, including an arbitration agreement. (*Id.*). Plaintiff testified that she could not see the computer screen while the enrollment counselor was working. (*Id.*).

Plaintiff's experience with a different enrollment counselor at the time she re-enrolled "was very similar to" her meeting with the first enrollment counselor "except that the meeting was much quicker and [Plaintiff] never entered any information into the computer ... [and] never saw [the] computer screen." (*Id.*). According to Plaintiff's affidavit, the second enrollment counselor completed all enrollment documents for Plaintiff; however, Plaintiff "never told or authorized [the enrollment counselor] to sign any documents on [her] behalf during the enrollment process." (*Id.*).

In other words, Plaintiff provides sworn testimony that she not only did not agree to arbitrate disputes with Virginia College nor authorize Virginia College to sign or enter into agreements on her behalf, Plaintiff never saw any of Virginia College's proffered agreements and "had no clue what the word 'arbitration' meant" before meeting with her attorney in this matter. (Doc. 8-1 at p. 1).

The affidavit Plaintiff procured from another Virginia College student provides evidence that is akin to Plaintiff's testimony. (Doc. 8-2). That student had a materially similar enrollment experience to Plaintiff's, including not giving her authorization for the enrollment counselor to enter an arbitration agreement on her behalf, not executing any such agreements personally, and not being afforded the opportunity to read the enrollment documents which, according to the affiant, were described by the enrollment counselor as "standard stuff." (Doc. 8-2). The affiant testified that the enrollment counselor completed all enrollment documents.

Accordingly, when considering both parties' positions and evidence, the court is confronted with radically different statements of material fact and supporting evidence. Notably, both Plaintiff and Virginia College are resolute that their own respective statement of facts is the solemn truth and that the opposing party is being untruthful. (Docs. 8 & 12).

## III.   DISCUSSION

In light of Plaintiff's evidence in opposition to the motion to compel arbitration when viewed under the proper summary-judgment-like standard discussed in *Chambers*, *supra*, the issue before this court is a narrow one: Did Plaintiff enter into a written agreement to arbitrate disputes with Virginia College?

Virginia College claims the answer to that question is simple and

13

straightforward as it has proffered arbitration agreements that bear Plaintiff's name on the signature line.  That, however, is not the end of the inquiry under either federal or state law.  While Alabama law allows for parties to enter into contracts by means other than a signature and the Eleventh Circuit squarely held in *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005), that a signature is not required for an arbitration agreement to be in "writing" under Section 2 of the Federal Arbitration Act, the method of assent expressly stated in the arbitration agreements at issue is by the Plaintiff's signature.  (Docs. 6 & 6-1).  That, then, is the starting point of analysis: Did Plaintiff sign the agreements?  If not, then did she otherwise assent to arbitrate? On the evidentiary record, both questions must be answered in the negative.

Consistent with the language of the proffered arbitration provisions, Virginia College argues that Plaintiff agreed to arbitrate by executing arbitration agreements with her electronic signature or, alternatively, that she vested the enrollment counselors with agency authority to execute agreements on her behalf, or, again alternatively, that Plaintiff ratified all agreements with Virginia College by virtue of being a student for six terms.[10]  (Docs. 6 & 12).  Each argument is addressed in turn.

---

[10] Notably, Virginia College raises the latter two arguments for the first time in its reply brief.  A reply brief is not the proper place to make novel arguments that could have been raised in the initial motion but were not.  If this was a close call, the court would have permitted

**A.     Plaintiff has offered the requisite "some evidence" to support her version of events.**

As noted *supra*, it is well established that "[t]he party seeking to avoid arbitration must unequivocally deny that an agreement to arbitrate was reached and must offer 'some evidence' to substantiate the denial." *Wheat, First Securities, Inc.*, 993 F.2d 814, 817 (11th Cir. 1993) (quoting *Chastain*, 957 F.2d at 854 (citing, in turn, *T & R Enters. v. Continental Grain Co.*, 613 F.2d 1272, 1278 (5th Cir.1980))). The Eleventh Circuit and former Fifth Circuit have been reluctant to draw a bright line test for the "some evidence" standard, choosing instead to assess a non-movant's evidence on a case-by-case basis. The "some evidence" burden is seemingly not high. For example, nearly thirty years ago, the Eleventh Circuit rejected a movant's contention that a non-movants' failure to submit affidavits or a verified complaint in opposition to a motion to compel arbitration fell short of the "some evidence" mark. *Cancannon v. Smith Barney, Harris, Upham & Co.*, 802 F.2d 998, 1000-01 (11th Cir. 1986).

In *Cancannon*, non-movants argued that they could not be forced to arbitrate a dispute related to a securities account because they did not agree to arbitrate and,

---

Plaintiff the opportunity to file a surreply brief.  Because the record is adequately developed to allow for a decision on the merits of Virginia College's motion and the motion to compel arbitration is due to be denied, the ends of justice and judicial economy are not served by additional briefing.

indeed, they had no knowledge that they had a securities trading account with Smith Barney. *Id.* The non-movants mistakenly thought their money was being held in a money market account, which made a material difference in the arbitrability analysis as the proffered arbitration agreement was attached solely to the securities trading account agreement. In support of their position, the non-movants filed into the record a letter which contained what the Eleventh Circuit dubbed a "fictitious financial summary" that the court found was "some evidence" to bolster their allegations that they had no knowledge of any securities trading account nor of any arbitration agreement. *Id.*

It is a difficult burden to submit evidence to prove a negative. *See*, *e.g.*, *Wheat, First Securities, Inc.*, 993 F.2d 814, 817-18 (11th Cir. 1993) (Observing that "Wheat First has absolutely denied that it is bound to arbitrate the Appellants' Marshall Securities claims and, to the extent it is possible to prove a negative, has offered evidence to prove that there was no agreement to arbitrate."). Nevertheless, Plaintiff has put forward evidence to attempt to prove she did not agree to arbitrate. Plaintiff submitted an affidavit unequivocally denying that she ever entered into an arbitration agreement and the affidavit of another Virginia College student who arguably had a materially similar enrollment experience to Plaintiff's. That sworn, detailed testimony constitutes the necessary "some evidence" under the circumstances of this

16

particular case.

**B.    Virginia College's attacks on the truthfulness of Plaintiff's testimony does not inform the arbitrability issue.**

Virginia College responds to Plaintiff's evidence and version of facts by challenging the veracity of her testimony. (Doc. 12). Plaintiff's truthfulness or lack thereof does nothing to inform the court's analysis at this juncture due to the summary disposition standard that must be employed. The Eleventh Circuit observed that a movant's "specter of contractual parties lying to avoid arbitration [is not] sufficient to influence [a court's] construction of the Federal Arbitration Act" because the non-movant must offer evidence to support her denial of an agreement. *Chastain*, 957 F.2d at 855. The weight and credibility of evidence is for the trier of fact, and it is improper for a court to determine that a party is being dishonest once conflicting evidence is of record on a motion to compel arbitration. *See*, *e.g.*, *Chambers*, *supra*.

**C.    There is an issue for trial as to whether Plaintiff agreed to arbitrate disputes with Virginia College.**

**1.    Virginia College cannot show that Plaintiff signed a written arbitration agreement.**

The basis of Virginia College's argument that Plaintiff actually signed arbitration agreements is that Plaintiff also agreed to conduct transactions electronically. Virginia College assumes that to be so and asserts that, because it has

offered arbitration agreements bearing Plaintiff's electronic signature, then arbitration must be compelled. That argument does not factor in Plaintiff's evidence nor does it acknowledge the applicable summary-judgment-like standard.

There is disputed evidence about whether Plaintiff executed the proffered E-Sign Form and arbitration agreements.  Virginia College is correct that it is not a requirement that a contract to conduct business electronically be signed with a hand written signature.  *See* Ala. Code § 8-1A-5(a).  However, the agreement to conduct business electronically must be manifested in accord with Alabama contract law generally and consistent with Alabama's Uniform Electronic Transactions Act.  *See* Ala. Code § 8-1A-5(e)("Whether an electronic record or electronic signature has legal consequences is determined by this chapter and other applicable law.").  Virginia College glosses over the important step of meeting its burden of demonstrating that the E-Sign Form is an executed and valid contract between the parties under Alabama law, and it cannot do so on the disputed evidence.  Plaintiff denies ever vesting Virginia College's enrollment counselors with the authority to sign any documents on her behalf, which seemingly includes an agreement to conduct business electronically, and such an agreement to transact business electronically is not evident when viewing the facts in a light most favorable to Plaintiff.

As parties must agree to transact business electronically pursuant to the

Alabama Uniform Electronic Transactions Act, and Plaintiff presents evidence that she did not so agree through either the E-Sign Form or the arbitration provisions, that disagreement presents a material dispute of fact on the question of arbitrability because Virginia College relies on Plaintiff's electronic signature as its basis for arguing that Plaintiff electronically assented to the arbitration agreements at issue, which all purport to bear Plaintiff's electronic signature. *See* Ala. Code 8-1A-5(b) ("This chapter applies only to transactions between parties each of which has agreed to conduct transactions by electronic means. Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct.").

Virginia College directs the court to Alabama's Uniform Electronic Transactions Act for the proposition that, "A record or signature may not be denied legal effect or enforceability solely because it is in electronic form." (Doc. 12 at p. 3) (quoting Ala. Code § 8-1A-7 and citing *Mercedes-Benz U.S. Int'l, Inc. v. Cobasys, LLC*, 605 F. Supp. 2d 1189, 1197 (N.D. Ala. 2009)).[11]  In evoking that

---

[11] Virginia College points to *Mercedes-Benz* as a case that is analogous to the instant action.  That is not so.  In *Mercedes-Benz*, the non-movant argued that a contract was not enforceable because no one physically signed the document, but there was no dispute that the parties agreed to conduct business electronically; therefore, Ala. Code § 8-1A-7 applied.  *See* 605 F.Supp.2d at 1188.  In the present case, Plaintiff disputes entering into any contract with Virginia College during enrollment or re-enrollment, including one to conduct transactions electronically.

statute to the exclusion of the remainder of the Act, Virginia College confuses both the breadth of the Act and Plaintiff's position on the proffered documents. She is not refusing to give an electronic signature its appropriate legal effect. Rather, Plaintiff denies ever signing any agreement, whether electronically or physically. That denial places the parties in a different posture than they would be if Plaintiff disavowed the legal impact of an electronic signature but conceded that she otherwise entered into agreements with Virginia College.

Under the circumstances of this case and viewing the facts in a light most favorable to Plaintiff, Virginia College cannot meet its burden to show that Plaintiff agreed to arbitrate by signing or affixing her electronic signature to a written agreement. As such, the court will examiVirginia College's alternative arguments in support of its motion to compel arbitration.

> **2.   Virginia College has not shown that Plaintiff vested it or its enrollment counselors with agency authority to enter into agreements on her behalf.**

Assuming that Plaintiff's version of certain facts is true — *i.e.*, that she did not sign the agreements at issue and that the enrollment counselors signed the contracts instead — Virginia College argues, alternatively, that Plaintiff delegated actual or apparent agency authority to the enrollment counselors to enter into agreements on her behalf by providing a password to the counselors. Without explaining how, as

a matter of fact or law, Plaintiff creating or sharing a password vests agency authority in Virginia College's employees, Virginia College sets out the proposition as an axiomatic truth.  The court disagrees.  Virginia College has not shown on the record, viewed in a light most favorable to Plaintiff, that she delegated agency authority to it or to the enrollment counselors.  Plaintiff's affidavit belies Virginia College's assertions on agency: She testifies that she did not confer authority on the enrollment counselors to enter agreements on her behalf.  (Doc. 8-1).

In support of its legal arguments regarding agency, Virginia College primarily relies on two cases.  The first is the Eleventh Circuit decision of *Bd. of Trs. of City of Delray Beach Police and Firefighters Retirement System v. Citigroup Global Mkts., Inc.*, 622 F.3d 1335, 1342  (11th  Cir.  2010), for the holding, as Virginia College paraphrases it, that a "motion to compel arbitration should be granted, as a party 'may be compelled to arbitrate if a signatory executed the arbitration as its agent.'" (Doc. 12 at pp. 4-5).  That decision is inapposite to this case as it is an analysis of Florida's agency law, not Alabama law, and under remarkably different facts from the case at bar.  In *Delray Beach*, the agent was an individual who was authorized by the Board to execute an agreement which the Court concluded gave rise to his apparent authority to also bind the Board to an arbitration clause associated with that agreement.  *Id.*  Those facts, even assuming *arguendo* that Florida agency

law is analogous to Alabama law, are not similar to those in this case, where Plaintiff denies entering into any of the proffered agreements.

The second case Virginia College offers is the unpublished decision in *Linn v. ST Mobile Aerospace Engineering, Inc.*, 2008 WL 2945558, No. 07-0377-WS-M (S.D. Ala. July 25, 2008), penned by the Hon. William Steele, U.S. District Judge for the Southern District of Alabama, and in which Judge Steele discusses the doctrine of apparent agency under Alabama law. As an initial matter, Virginia College merges the doctrines of actual and apparent agency without drawing a distinction between what are different legal concepts. That said, for reasons already discussed and viewing the facts in a light most favorable to Plaintiff, there is not evidence to support a finding of actual agency authority as Plaintiff expressly denies conferring actual agency. Likewise, there is not substantial evidence to implicate apparent agency as a matter of law.

The *Linn* case is instructive on the point of apparent agency, but not in Virginia College's favor. Virginia College cites *Linn* for the broad point of law that, "'It is ... well settled that an agent with actual or apparent authority may enter into a contract and bind his or her principal.'" *Linn*, 2008 WL 2945558, at *8 (quoting *Cook's Pest Control, Inc. v. Rebar*, 852 So.2d 730, 738 (Ala. 2002)). The paragraphs of *Linn* that follow the court's discussion of *Cook's Pest Control* are informative on the apparent

22

agency questions presented in this action, but those portions of *Linn* are not cited by

Virginia College.

Judge Steele correctly summarized Alabama law on apparent agency, in

relevant part, as follows:

> Under Alabama law, "[t]he doctrine of apparent authority is based
> on the principal's holding the agent out to a third person as having the
> authority under which he acts, and the doctrine can be invoked by one
> who has been misled to his detriment." *Rosser v. AAMCO
> Transmissions, Inc.*, 923 So.2d 294, 301 (Ala. 2005) (citations and
> internal quotations omitted). The critical point is that "[a]n agent's
> apparent authority must be founded upon the conduct of the principal
> and not upon the conduct of the agent." *Alexander v. Burch*, 968 So.2d
> 992, 996-97 (Ala. 2006) (citation omitted); *see also Kennedy v. Western
> Sizzlin Corp.*, 857 So.2d 71, 77 (Ala. 2003) ("Apparent authority is
> inferred from the conduct of the principal."). Apparent authority may be
> conferred by both acts and omissions of the principal, and apparent
> authority may be found to exist "where the principal passively permits
> the agent to appear to a third party to have the authority to act on his
> behalf." *Cook's Pest Control*, 852 So.2d at 738. The Eleventh Circuit
> has succinctly summarized the Alabama test for apparent authority as
> follows: "Apparent authority is based on the principal holding the agent
> out to the third party as having the authority upon which he acts, not
> upon what one thinks an agent's authority might be, or what the agent
> holds out his authority to be." *General American Life Ins. Co. v.
> AmSouth Bank*, 100 F.3d 893, 898 (11th Cir. 1996) (applying Alabama
> law); *see also Glass*, 990 F.Supp. at 1353 ("Representations of the agent
> cannot be the basis for a finding of apparent authority.") (citation
> omitted).
>
> The Alabama Supreme Court has opined that "a summary
> judgment on the issue of agency is generally inappropriate because
> agency is a question of fact to be determined by the trier of fact," but
> that the party asserting it still "has the burden of adducing substantial

evidence to prove its existence." *Kennedy*, 857 So.2d at 77 (citation omitted); *see also Glass*, 990 F.Supp. at 1351 (recognizing that, while agency questions are generally determined by the finder of fact, a plaintiff must still come forward with evidence from which a reasonable jury could find an agency relationship).

*Linn*, 2008 WL 2945558, at **8-9.

Virginia College has failed to put forward "substantial evidence"; as such, a summary disposition of the agency question is appropriate on this evidentiary record. For Virginia College to have a successful argument that an apparent agency relationship was created under Alabama law, there would have to be substantial evidence that Plaintiff held the enrollment counselors out to a third party, in this instance to Virginia College (the enrollment counselors' employer), as her agent and to the detriment of Virginia College. Virginia College has not directed the court to evidence that Plaintiff identified the enrollment counselors to Virginia College as her agents; to the contrary, Plaintiff denies that agency relationship. Also, Virginia College does not discuss how it relied on the enrollment counselors as Plaintiff's agents to its detriment, even assuming for the sake of argument that Virginia College could reasonably be expected to believe that its own employees were Plaintiff's agents based on Plaintiff's actions, and not on the testimony of the enrollment counselors. The elements of apparent agency are not present, and there is not "substantial" evidence of an apparent agency relationship between Plaintiff and the

24

enrollment counselors such as to give rise to an issue of fact for trial.

### 3. Virginia College has not shown that Plaintiff ratified the proffered agreements through her status as a student.

Virginia College also argues, alternatively, that

> Plaintiff subsequently ratified and assented to the agreements by attending classes at Virginia College day after day, knowing that the College only permitted her to do so because she agreed to the terms and conditions in its Enrollment and Tuition Agreement (including the arbitration agreement).

(Doc. 12 at p. 5).  That argument presupposes facts not in evidence — *i.e.*, that Plaintiff *knew* Virginia College allowed her to attend classes *because* of certain agreements — and a fact disputed by Plaintiff's affidavit — *i.e.*, that she entered into the Enrollment and Tuition Agreement.[12]  None of those facts is established for purposes of the instant motion; consequently, Virginia College's argument fails.

Moreover, the legal authority Virginia College relies upon is not on point.  For example, Virginia College relies on *Stinson v. America's Home Place, Inc.*, 108 F.Supp.2d 1278, 1281 (M.D. Ala. 2000) (Thompson, J.), in support of its ratification by attendance argument.  That case, unlike the instant action, involved parties that did

---

[12] Virginia College puts a great deal of stock in its assertion that "execution of the Enrollment and Tuition Agreement is a necessary condition to enrollment at the school." (Doc. 12 at p. 9 n.5).  What Virginia College slides over to reach that conclusion is Plaintiff's evidence challenging the entire process by which that document came to bear her name on the signature line.  Plaintiff's affidavit and that of another student detail that Virginia College's enrollment counselors, and not the students, place the student's name on the agreements without the student's knowledge or permission.

not dispute that they entered into a signed contract that contained an arbitration provision; the non-movant in *Stinson* attacked the contract on collateral grounds such as invalidity.  *See* 108 F.Supp.2d at 1281.  Here, Virginia College simply ignores Plaintiff's brief and evidence that she never entered into the agreements Virginia College put into evidence.  While Virginia College would like to overlook that damaging evidence, the court cannot and will not push aside Plaintiff's evidence.

## IV.    CONCLUSION, RECOMMENDATION AND ORDER

On the record in this case and in light of the parties' irreconcilable versions of the facts, Virginia College has not met its burden to demonstrate that Plaintiff entered into arbitration agreements.  Virginia College cannot escape the evidence that Plaintiff unequivocally denies forming any of the proffered written arbitration agreements with Virginia College, and Plaintiff, in turn, cannot avoid a trial on arbitrability because of the evidence supplied by Virginia College.   On this evidentiary record, the court cannot decide the disputed factual question of whether Plaintiff agreed to arbitrate her claims.  Employing the summary disposition standard of review countenanced by the Eleventh Circuit in *Johnson*, 754 F.3d at 1294, and relied upon previously by this court in *Chambers*, *supra*, this case is similar to *Chambers* as it presents the situation of an issue for trial as to whether there is an agreement to arbitrate between the parties.   In effect, by arguing that "the

*overwhelming* evidence shows that Plaintiff executed these arbitration agreements herself," Virginia College implicitly concedes both that there is evidence against its version of the material facts and that a finding of fact must be made.  (Doc. 12 at p. 4) (emphasis supplied).

As the parties have put the question of arbitrability "in issue" and adjudication thereof requires credibility determinations and findings of fact, the FAA leaves no option but for the court to "proceed summarily to the trial thereof[.]" 9 U.S.C. § 4. *See also Chambers*, 41 F.Supp.3d at 1339 (citations omitted).

For the reasons discussed herein, the Magistrate Judge **RECOMMENDS** that "Defendant Virginia College, LLC's Motion to Compel Arbitration and/or Motion to Dismiss" (Doc. 6) is due to be **DENIED** and that the District Court should "summarily" and expeditiously set this matter for trial pursuant to 9 U.S.C. § 4. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 940 & n.27 (1983) (Section 4 of the FAA mandates that a district court "summarily" effect an "expeditious" resolution of an issue of arbitrability).  The trial should be limited to whether there is a written arbitration agreement as required by 9 U.S.C. § 2 and whether Plaintiff assented to binding arbitration under Alabama law, and the trier of fact should weigh the evidence and make determinations of fact on those points.

The parties did not brief the issue of whether such a trial should proceed as a jury or a non-jury setting.  Indeed, the parties are silent regarding the possibility that resolution of the arbitrability question might come to a trial.  Under Section 4 of the FAA,

> [w]here such an issue [of arbitrability] is raised, the party alleged to be in default may ... on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C. § 4.  The party resisting arbitration "bears the burden of showing that [she] is entitled to a jury trial."  *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 129 (2d Cir. 1997)(citations omitted); *see also*, *e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 398 n.12 (5th Cir. Feb. 19, 1981)(the party resisting arbitration has "the burden of showing entitlement to a jury trial"); *Southside Internists Group PC Money Purchase Plan v. Janus Capital Corp.*, 741 F.Supp. 1536, 1538 (N.D. Ala. 1990) (When a defendant "moved to compel arbitration under § 4, the plaintiffs have a right to a jury trial on any genuine factual questions related to the validity of the arbitration clause ... the right to the jury is available only if there is a

§ 4 motion to compel arbitration and if the party opposing arbitration requests a jury."). "If no jury trial be demanded by the party alleged to be in default ... the court shall hear and determine such issue." 9 U.S.C. § 4.

In the present case, Plaintiff demanded a trial by jury in her Complaint, and she expressly avers that Virginia College "wrongfully maintains that Plaintiff is obligated to arbitrate her claims...." (Doc. 1 at ¶ 20). In response to the motion to compel arbitration, however, Plaintiff did not demand a trial by jury on the issue of arbitration. The question of whether a jury trial or a bench trial is mandated must be addressed by the parties and the determined by the court. Accordingly, the parties are **ORDERED** to simultaneously file briefs, at **12:00 p.m. on June 9, 2015**, addressing only whether the arbitrability matter "in issue" should proceed to a jury trial or a bench trial. The parties are relieved of the obligation to brief the jury trial issue if Plaintiff files a notice with the court consenting to a bench trial of the matter of arbitrability on or before **June 2, 2015**.

It is additionally **ORDERED** that the parties shall file any objections to this Report and Recommendation on or before **June 9, 2015.** Any objections filed must specifically identify the findings in the Magistrate Judge's Report and Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that

this Report and Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's Report and Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the Report and Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).

**DONE** and **ORDERED** this 26th day of May, 2015.

/s/ Paul W. Greene
United States Magistrate Judge